FILED

2014 NOV 17 PM 4: 42

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CAL'F.
LOS ANGELES

BY:_____

**Judy Anne Mikovits**
**140 Acacia Ave.  #5**
**Carlsbad, CA 92008**
**(805) 797-6967**
jamikovits@me.com

Attorney for Self:  In Pro Per

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CV 14-08909-SVW(PLA)

JUDY ANNE MIKOVITS

Plaintiff,

vs.

ADAM GARCIA, JAMIE MCGUIRE,
RICHARD GAMMICK, GEOFF DEAN,
THREE UNIDENTIFIED VENTURA
COUNTY DEPUTY SHERRIFFS,
F. HARVEY WHITTEMORE, ANNETTE
F. WHITTEMORE, CARLI WEST
KINNE, WHITTEMORE-PETERSON
INSTITUTE, a Nevada corporation,
UNEVX INC., a Nevada corporation,
MICHAEL HILLERBY, KENNETH
HUNTER, GREG PARI and VINCENT
LOMBARDI.

Case No.

To be supplied by Clerk of USDC

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO 42 USC Sec 1983**

**JURY TRIAL DEMANDED**

Judy  Anne  Mikovits  ("Plaintiff"),  who  presently  resides  in  Carlsbad,  California,
representing  herself  pro  se,  and  complaining  against  the  Defendants  Adam  Garcia,  Jamie
McGuire,  Richard  Gammick,  Geoff  Dean,  three  unidentified  Ventura  County  Deputy  Sherriffs,  F.
Harvey  Whittemore,  Annette  F.  Whittemore,  Whittemore-Peterson  Institute,  a  Nevada
corporation,  UNEVX  Inc.,  a  Nevada  corporation,  Carli  West  Kinne,  Michael  Hillerby,  Kenneth
Hunter,  Greg  Pari  and  Vincent  Lombardi,  alleges  as  follows.

- 1 -

**COMPLAINT**

JURISDICTION AND VENUE

1.  This action is brought pursuant to 42 USC Sec. 1983, and jurisdiction of this Court is invoked under 28 USC Secs. 1331 and 1343.  Plaintiff further invokes the pendant jurisdiction of this Court to hear and decide claims arising under state law.

2.  The amount in controversy exceeds $50,000, exclusive of interest and costs.

3.  Venue is placed in this district because it is where the events complained of occurred.

4.  Plaintiff demands a jury trial for all claims for which a jury trial is allowed.

PARTIES

5.  Plaintiff Judy Mikovits, Ph.D. ("MIKOVITS" or "PLAINTIFF") was at all times material herein a citizen of the United Stated and a resident of Oxnard, California.

6.  Defendant Adam Garcia ("CHIEF GARCIA") was at all times material herein a duly appointed and acting officer and Chief of Police of the Police Services Department of the University of Nevada at Reno ("UNR").

7.  Defendant Jaime McGuire ("DETECTIVE McGUIRE") was at all times herein a duly appointed and acting officer and Detective of the Police Services Department of UNR.

8.  Defendant Richard Gammick ("D.A. GAMMICK") was at all times material herein the District Attorney of Washoe County, Nevada, in which UNR is located.

9.  Defendant Geoff Dean ("SHERIFF DEAN") was at all times material herein the Sheriff of Ventura County, California.

10.  The unidentified 3 Ventura County Deputy Sheriffs ("VENTURA DEPUTIES") were at all times material herein, duly appointed and acting as deputies of the Sheriff's Department of Ventura County, California.

11.  Defendant F. Harvey Whittemore ("MR. WHITTEMORE") was at all times material herein the President of the UNR Foundation, a controlling equity owner of Defendant UNEVX (see below), a registered lobbyist and attorney admitted to practice in the State of Nevada, and the spouse of Defendant MRS. WHITTEMORE.  MR. WHITTEMORE, widely described during that period as the most powerful lobbyist in Nevada, after the events related in

1   this Complaint, was subsequently convicted, and presently resides at the federal correctional

2   institution at Lompoc, California.

3        12.   Defendant Annette F. Whittemore ("MRS. WHITTEMORE") was at all times material

4   herein the President of Defendant WPI (see below) and, together with her husband MR.

5   WHITTEMORE. a controlling equity owner of UNEVX.

6        13.   Defendant Carli West KINNE ("KINNE") was at all times material herein a Vice

7   President of WP Biotechnologies, Inc., Legal Counsel for Defendant WPI, a registered attorney

8   admitted to practice in the State of Nevada, and MRS. WHITTEMORE'S niece.   MR.

9   WHITTEMORE, MRS. WHITTEMORE and KINNE are sometimes referred to here as the

10   "WHITTEMORE PRINCIPALS."

11        14.   Defendant UNEVX Inc., a Nevada corporation, formerly known as VIPdx Inc.

12   ("UNEVX"), was at all times material herein a for-profit enterprise associated with the

13   WHITTEMORE PRINCIPALS.

14        15.   Defendant The Whittemore-Peterson Institute, a Nevada corporation ("WPI"), at all

15   times material herein was housed at, shared employees with, and subject to an Affiliation

16   Agreement with, UNR.

17        16.   Defendant Kenneth Hunter, Sc.D. ("HUNTER") was at all times material herein is a

18   Professor of Immunology at UNR School of Medicine, and was the Chairman of the Scientific

19   Advisory Board of WPI.

20        17.   Defendant Greg Pari, Ph.D. ("PARI") was at all times material herein is a Professor of

21   Immunology at UNR, Chairman of that Department, and a member of the Scientific Advisory

22   Board of WPI.

23        18.   Vincent Lombardi, Ph.D. ("LOMBARDI") was at all times material herein an

24   employee of WPI and Director of Operations for UNEVX.

25        19.   Michael Hillerby ("HILLERBY") was at all times material herein an independent

26   contractor engaged by WPI, and a former corporate officer of WPI.

27

28

**COMPLAINT**

20.   At all times relevant to the allegations of this Complaint, and in all of their actions alleged herein, (a) Defendants CHIEF GARCIA, DETECTIVE McGUIRE, SHERIFF DEAN and the three VENTURA DEPUTIES were acting under color of law and pursuant to their respective authority as police officers and directly responsible supervisors in their respective police departments;  (b) Defendant "D.A. GAMMICK" was acting under color of law and pursuant to his authority as District Attorney of Washoe County, Nevada;  and (c) Defendants MR. WHITTEMORE, MRS. WHITTEMORE, KINNE, UNEVX, WPI, HUNTER, PARI, LOMBARDI and HILLERBY were acting in active conspiracy with Defendants CHIEF GARCIA, DETECTIVE McGUIRE and D.A. GAMMICK to cause the false imprisonment and other illegal actions claimed herein.

21.   PLAINTIFF sues each and all Defendants in both their individual and official capacities.

22.   The core of this Complaint is violation of PLAINTIFF'S federal Constitutional rights under color of law by virtue of false imprisonment, deliberate prevention of due process and defamation, all based on facially-meritless criminal and civil charges and a facially-defective alleged warrant, which were fabricated to detain, defame and thwart PLAINTIFF as a whistleblower, in a substantial case of Federal research grant fraud.

23.   PLAINTIFF, a research scientist with a 25+ year professional career in immunology and virology, was from November, 2007 until September, 2011 the Principal Investigator (party primarily responsible to the federal grant agency) for an R-01 Grant from the US National Institutes of Health, entitled "Pathophysiology of ME/CFS," which had a five-year duration ending September, 2013 (the "NIH Grant").   The NIH Grant generally was directed towards detection and explanation of a series of possible virus phenomena related to Chronic Fatigue Syndrome ("CFS"), on which PLAINTIFF had published extensively in medical journals.

24.   During that period, PLAINTIFF was employed as research director for WPI, and supervised multiple graduate and post-doctoral students in their related research including Defendant LOMBARDI.   Her supervisor as an employee was MRS. WHITTEMORE.

COMPLAINT

25.   During that same period, PLAINTIFF held an adjunct faculty appointment in the Department of Immunology of UNR.  Her supervisors as a faculty member were Defendants HUNTER and PARI.

26.   During June of 2011, PLAINTIFF determined that research conducted under her direction at WPI, pursuant to the NIH Grant, indicated that a promising specific test procedure developed by that lab, for possible detection of a hypothesized CFS retrovirus, had been compromised, because the relevant cell samples were contaminated, and so the procedure and conclusions were not scientifically reliable.   This same conclusion was verified by other independent immunologists consulting on the NIH Grant (but not affiliated with UNR).

27.   Defendant LOMBARDI, a 2007 Ph.D. graduate, was responsible for the procedures leading to the contamination.  LOMBARDI's employment was supported part-time by the NIH Grant, and part-time by UNEVX, a private company set up at the direction and under the control of the WHITTEMORE PRINCIPALS, to exploit that research and create a commercial diagnostic test for profit.  PLAINTIFF's investigation of the contamination primarily consisted of review of employee work journals created under the NIH Grant ("NIH Grant Journals"), and confidential patient data records indicating which cell samples related to which diagnoses ("NIH Grant Personal Health Data").

28.   In conducting that review, during July, 2011, she discovered that LOMBARDI had put substantially all his time into UNEVX, and none into the NIH Grant project;   and further that he was using materials, data and text results that were paid for by the NIH Grant, instead for the UNEVX for-profit project, against the terms of the NIH Grant and its funding and privacy regulations for which she was principally responsible.

29.   In August, 2011, PLAINTIFF submitted an independent study, showing that the contaminated WPI study was in error, which article was accepted for publication in the September 22, 2011 issue of *Science*, a major trade journal in medical research.  That article had the practical effect of invalidating the commercial diagnostic test that UNEVX and LOMBARDI had recently begun to market.   On or about September 2, 2011, PLAINTIFF informed the WHITTEMORE PRINCIPALS that she was terminating LOMBARDI from the NIH Grant staff,

as he had been drawing approximately 50% pay from the NIH Grant for about 2 years, but the NIH Grant Journals demonstrated that he had performed substantially no work for it, and instead placed all of his effort into the WHITTEMORE PRINCIPALS' commercial project UNEVX (known at the time as VIPdx).

30.   On or about September 29, 2011, MRS. WHITTEMORE informed PLAINTIFF that she was terminated, immediately locked the laboratory complex so that PLAINTIFF could not retrieve any possessions or materials, and announced that all WPI employees were directed to stay away from the facility for a week.  On information and belief, MRS. WHITTEMORE actively consulted with the other WHITTEMORE PRINCIPALS and defendants HUNTER, PARI, LOMBARDI and HILLERBY in the firing and abrupt closure.   PLAINTIFF returned home to California.

31.   On November 18, 2011, DETECTIVE McGUIRE appeared at Plaintiff's residence, misidentified herself as a patient of PLAINTIFF, speaking through the front door, with her supervisor CHIEF GARCIA and three unidentified VENTURA DEPUTIES concealed, and then when PLAINTIFF indicated that she did not recognize her, forced entry into PLAINTIFF's front door, and handcuffed her, arrested her and detained her.  DETECTIVE McGUIRE and the one female VENTURA DEPUTIES immediately took PLAINTIFF to the sheriff's station at Ventura County Courthouse.

32.   CHIEF GARCIA and the two remaining male VENTURA DEPUTIES remained to search PLAINTIFF'S residence, harassed PLAINTIFF's 73-year old spouse, and confiscated various personal and professional items including computers and written records.

33.   PLAINTIFF asked the VENTURA DEPUTIES for a warrant, at her residence at the time of arrest, and was shown an otherwise-blank yellow piece of paper, with her name and residential address, and a rubber stamp judge's approval imprint from the Ventura Superior Court, listing no cause, listing no search scope or items sought, and indicating no arrest authority.

**COMPLAINT**

COUNT I

34.   On information and belief, the defective alleged warrant was obtained and issued based on misrepresentations made by the WHITTEMORE PRINCIPALS, LOMBARDI and HILLERBY and the active collusion of D.A. GAMMICK in conspiracy with MR. WHITTEMORE.   As observed later in her eventual bail hearing, and by the dismissal of the criminal allegations, there never was any colorable flight risk, and there never were any colorable criminal charges warranting arrest.

35.   Defendants WHITTEMORE PRINCIPALS, WPI, LOMBARDI and HILLERBY committed fraud by claiming that PLAINTIFF had removed copies of certain NIH Grant Journals and NIH Grant Personal Health Data from the WPI lab (the "Key Materials"), without a basis for that claim.  On information and belief, they knew that no such materials could have been removed by PLAINTIFF.

36.   On information and belief, Defendants LOMBARDI, HILLERBY and UNEVX deliberately despoiled evidence of the location of the Key Materials while all regular employees of WPI were locked out of the facility.

37.   Defendants WHITTEMORE PRINCIPALS also created fraudulent contracts, with a forged signature allegedly from PLAINTIFF, to use as evidence that the WPI Key Materials were subject to some proprietary confidentiality interests.

38.   These misrepresentations were made in order to detain PLAINTIFF in a Ventura County jail, on false criminal charges and fraudulent assertions of flight risk, during the period of time when she otherwise would have acted to defend herself in Nevada, in a just-filed Nevada State Court action by WPI relating to the Key Materials, set for hearing on November 22, 2011, the fifth day of her incarceration.    No information about the cause or intent of her detention was provided to Plaintiff at the time of her arrest.

39.   Shortly after PLAINTIFF's arrest, MR. WHITTEMORE contacted Plaintiff's husband, David Nolde, and informed him that he was seeking the WPI Key Materials, and that Plaintiff might be released before Thanksgiving (November 24th) if they were found.   This was the first indication offered to PLAINTIFF regarding the motive for the arrest.

**COMPLAINT**

1    40. Defendants the WHITTEMORE PRINCIPALS and WPI sought and received a

2    temporary injunction from Judge Brent Adams in the Nevada State Court Action against

3    PLAINTIFF, while she was detained in California unable to defend her interest, barring her from

4    any access to the Key Materials.  That injunction was made permanent by Judge Adams shortly

5    thereafter (the "Adams Injunction").  Although the Nevada State Court Action never proceeded to

6    trial or hearing, as WPI did not further pursue it -- and Judge Adams recused himself once his

7    relationship with MR. WHITTEMORE was called to his attention ---  that permanent Adams

8    Injunction stands today, serving the Defendant's interests, and continues to bar PLAINTIFF from

9    being allowed to access or use that essential evidence -- thereby withholding information that has

10    no continuing commercial value, but thereby denying her due process.

11    41.   The Key Materials that were the focus of the WPI Nevada State Court Action, and the

12    putative object of the house search that followed false arrest of PLAINTIFF, were essential

13    evidence of (a) the finding that the test methods that UNEVX wished to privatize were invalid;

14    (b) LOMBARDI's contamination of key cell sample materials, (c) LOMBARDI's misuse of Grant

15    funds at the WHITTEMORE PRINCIPALS' explicit direction;  and (d) PLAINTIFF's conclusions

16    regarding the contamination.

17    42.   Due to the self-evident absence of any basis justifying their extraordinary enforcement

18    actions, the Defendants WHITTEMORE PRINCIPALS, LOMBARDI, HILLERBY, WPI,

19    UNEVX and D.A. GAMMICK committed false imprisonment and wrongful denial of due

20    process against PLAINTIFF, with resulting personal injury, loss of career economic value, and

21    grave defamation.

22                       COUNT II

23    43.   On information and belief, the factual and legal misrepresentations made by the

24    WHITTEMORE PRINCIPALS, LOMBARDI and HILLERBY with the active collusion of D.A.

25    GAMMICK, which resulted in the Ventura Superior Court warrant, were self-evidently about

26    research results:  not posing any significant economic damage, and not of a nature requiring

27    immediate action or cross-border arrests.  D. A. GAMMICK conspired with the WHITTEMORE

28    PRINCIPALS by failing to inquire and failing to exercise good judgment, as a law enforcement

**COMPLAINT**

1   official, regarding the basis for the extraordinary enforcement actions sought, for purposes of

2   retaliation rather than justice; or he willfully disregarded it on the basis of his relationship with

3   MR. WHITTEMORE.

4       44.   Defendant D.A. GAMMICK committed wrongful denial of due process against

5   PLAINTIFF, and actively cooperated in misuse of legal process against PLAINTIFF, with

6   resulting personal injury, loss of career economic value, and grave defamation.

7                                   COUNT III

8       45.   On information and belief, the factual and legal misrepresentations made by the

9   WHITTEMORE PRINCIPALS, LOMBARDI and HILLERBY with the active collusion of D.A.

10  GAMMICK relied on fraudulent forged documentation, which was facially apparent from a

11  cursory examination of the document.   D. A. GAMMICK conspired with the WHITTEMORE

12  PRINCIPALS, LOMBADRI and HILLEBY by failing to inquire or exercise good judgment, as a

13  law enforcement official, regarding the evidence of any colorable claim.

14      46.   This same forged evidence was put into evidence again in 2013 -- in PLAINTIFF's

15  later Chapter 7 federal bankruptcy proceeding, which PLAINTIFF initiated on advice of counsel

16  after having been rendered unable to pursue a career by Defendants' actions described herein -- in

17  a proof of claim submitted for WPI by Defendant KINNE under penalty of perjury.  That proof of

18  claim reasserted the forged contract, which had been given credibility by the original conspiracy.

19      47.   The Defendants WHITTEMORE PRINCIPALS, WPI, LOMBARDI, HILLERBY and

20  D.A. GAMMICK conspired to defraud PLAINTIFF, with resulting personal injury, loss of career

21  economic value, and grave defamation.

22                                  COUNT IV

23      48.   The defective alleged warrant created in Ventura State Court, on which the foregoing

24  arrest was made, contained no indicia of cause, scope or harm; it was fatally vague and invalid.

25  It could not properly be used as a basis for immediate arrest and indefinite detention.     On

26  information and belief, it was issued on the basis of knowledgably fraudulent statements directly

27  made to the Ventura Superior Court by CHIEF GARCIA and DETECTIVE McGUIRE,

28  employed as police officers by UNR, in service of the WHITTEMORE PRINCIPALS'

**COMPLAINT**

1  commercial interests.  CHIEF GARCIA and DETECTIVE McGUIRE conspired with the

2  WHITTEMORE PRINCIPALS by failing to inquire or exercise good judgment, as law

3  enforcement officials, regarding any colorable evidence justifying extraordinary and immediate

4  cross-border arrest sought without a colorable criminal charge;  or they willfully disregarded that

5  or knowledgably lied, on the basis of MR. WHITTEMORE's relationship with UNR.

6      49.  Defendants CHIEF GARCIA and DETECTIVE McGUIRE committed false

7  imprisonment and wrongful denial of due process against PLAINTIFF, with resulting personal

8  injury, loss of career economic value, and grave defamation.

9  COUNT V

10      50.  The defective alleged warrant created in Ventura State Court, on which the foregoing

11  arrest was made, contained no indicia of cause, scope or harm;  it was fatally vague and invalid.

12  It could not properly be used as a basis for immediate arrest and indefinite detention.   This would

13  be apparent on its face to any arresting officer asked to honor or support an arrest or a search from

14  another jurisdiction.

15      51. SHERIFF DEAN and the three unidentified VENTURA DEPUTIES under his direct

16  supervision were in a position to independently assess the circumstances and gravity of the UNR

17  Police Department's request for evidence justifying extraordinary and immediate cross-border

18  arrest without a colorable criminal charge.   They were in a position to review the alleged warrant

19  as well.  They failed to inquire or exercise good judgment, as law enforcement officials, regarding

20  any colorable basis for the extraordinary actions sought by CHIEF GARCIA and DETECTIVE

21  McGUIRE;  or they willfully disregarded that lack of basis.

22      52.  Defendants SHERIFF DEAN and the three VENTURA DEPUTIES committed false

23  imprisonment and wrongful denial of due process against PLAINTIFF, with resulting personal

24  injury, loss of career economic value, and grave defamation.

25

26

27

28

COUNT VI

1

2    53.    PLAINTIFF was released from detention in Ventura County late on November 22nd,

3    hours after the conclusion of the Nevada State Court Action hearing in Reno.  Defendant CHIEF

4    GARCIA, acting in conspiracy with the WHITTEMORE PRINCIPALS, demanded immediately

5    upon PLAINTIFF's release, via her new attorney, that she travel to Reno to appear in the Nevada

6    State Court Action, under threat of re-arrest.  During that proceeding in Nevada State Court,

7    Defendants escorted PLAINTIFF to a located where members of the news media were stationed

8    and, at the request of the press, required PLAINTIFF to submit to mugshot photographs later used

9    in scientific trade journals and local press.

10    54.    Defendants CHIEF GARCIA, acting in conspiracy with the WHITTEMORE

11    PRINCIPALS, committed false imprisonment and wrongful defamation against PLAINTIFF,

12    with resulting loss of career economic value, and grave injury to her reputation.

13

14    WHEREFORE,  Plaintiff demands judgment from the Defendants, and each of them, in

15    both their individual and official capacities, and seeks (a) compensatory and punitive damages;

16    (b) injunctive or mandamus relief to void the Adams Injunction so as to permit her to defend and

17    vindicate herself, and as evidence of certain claims made herein;  (c) attorney's fees, costs and

18    interests and (d) such other relief as Plaintiff may be entitled.

19

20

21    Dated:  November 17, 2014

22    By: _Judy Anne Mikovits_

23    Judy Anne Mikovits

24

25

26

27

28

- 11 -

**COMPLAINT**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☒ )

Judy Anne Mikovits

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

GARCIA, McGUIRE, GAMMICK, DEAN, FW WHITE AF WHITTEMORE, KINNE, WPI, LOTEVK, HILLERBY HUNTER, PARI, LOMBARDI & 3 UNKNOWN

**(b)** County of Residence of First Listed Plaintiff   SAN DIEGO
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   WASHOE, NV
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Judy Anne Mikovits
140 Acacia Ave, Apts
Carlsbad CA, 92008   805-789-8627

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ 750,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C. 1983

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **TORTS PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☒ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

CV14 - 08909

**FOR OFFICE USE ONLY:**   Case Number:

CV-71 (10/14)   CIVIL COVER SHEET   Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE**: Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1.  Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No | | ☐ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2.  Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1.  Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No | | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.2.  Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.  Orange County | B.  Riverside or San Bernardino County | C.  Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1.  Is there at least one answer in Column A? | D.2.  Is there at least one answer in Column B? |
|---|---|
| ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. → | If "no," your case will be assigned to the WESTERN DIVISION. |
| | Enter "Western" in response to Question E, below. ↓ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: → | WESTERN DIVISION |

**QUESTION F: Northern Counties?**

| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☒ Yes  ☐ No |
|---|---|

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court?**          ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court?**          ☒ NO    ☐ YES

If yes, list case number(s): _____

**Civil cases** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**  _Ledy Micoots_          DATE:  11/17/2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |