STATE OF CALIFORNIA - COUNTY OF VENTURA

# SEARCH WARRANT AND AFFIDAVIT
## (AFFIDAVIT)

I, **Todd Hourigan**, swear under oath that the facts expressed by me in the attached and incorporated **Statement of Probable Cause** are true, and that based thereon I have probable cause to believe and do believe that the property described below may be lawfully seized pursuant to Penal Code Section(s) 1524 and/or 1524.2, as indicated below, and is now located at the location(s) set forth below. Wherefore, I request that this Search Warrant be issued.

_____, NIGHT SEARCH REQUESTED: YES __ NO **X**
SIGNATURE OF AFFIANT

## (SEARCH WARRANT)

THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICEMAN OR PEACE OFFICER IN THE COUNTY OF VENTURA: Proof, by affidavit, having been made before me by **Todd Hourigan** that there is probable cause to believe that the property described herein may be found at the location(s) set forth herein and that it may be lawfully seized pursuant to Penal Code Section(s) 1524 and/or 1524.2 in that it:

**X**  was stolen or embezzled
____  was used as the means of committing a felony
____  is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery,
**X**  tends to show that a felony has been committed or that a particular person has committed a felony,
____  tends to show that sexual exploitation of a child, in violation of P.C. Section 311.3, has occurred or is occurring;

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

**The following location:**

1. **7081 Wolverine Street Ventura, County of Ventura, California.**

Further described as a two-story single-family residence. The residence is white in color with off white trim and has a brown composite roof. The residence is marked "7081" with 3" black numbers, which are affixed to the trim above the garage door. The residence is located three residencies west of Buffalo Avenue, on the north side of Wolverine Street.

Areas to be searched to include all rooms, attics, basements, containers, safes, and other parts therein, the surrounding grounds and any garages, storage rooms, trash containers, and outbuildings of any kind located thereon. Any vehicles parked at or in the vicinity of 7081 Wolverine Street Ventura California 93004 provided said vehicles could be shown by paperwork, keys, or registration to be associated with the listed address. These vehicles are to be searched only during the date and time of the execution of the search warrant.

2. **2031 Jamestown Way Oxnard, County of Ventura, California.** 11/29/11

A. Borrayo

Further described as a two-story condo residence. The residence is blue in color with white trim and has a brown composite roof. The residence is marked "2031" with 4" black numbers, which are affixed to a brick column south of the front door. The residence is located three buildings south of Costa de Oro, on the west side of Jamestown Way.

Areas to be searched to include all rooms, attics, basements, containers, safes, and other parts therein, the surrounding grounds and any garages, storage rooms, trash containers, and outbuildings of any kind located thereon. Any vehicles, boats and/ or vessels parked at or in the vicinity of 2031 Jamestown Way Oxnard California 93030

provided said vehicles, boats and/or vessels could be shown by paperwork, keys, or registration to be associated with Judy Mikovits or the listed address. The residence is located in the Oxnard Harbor and the ocean is located to the rear of the residence. The residence 2031 Jamestown Way has a Boat dock that is attached to the residence. These vehicles, boats and/or vessels are to be searched only during the date and time of the execution of the search warrant.

**FOR THE FOLLOWING PROPERTY:**

1. Papers, documents and property that show possession, dominion and control over the premises listed above, including keys, cancelled mail, envelopes, rental agreements, and receipts, utility and telephone bills, photographs, filled prescription bottles, vehicle registrations, vehicle repair documents, gas receipts, insurance papers, address and telephone books, diaries, government notice documents, clothing, and any kind of objects which bear a persons name, phone number or address.

2. Any computers, cellular phones, computer storage devices, including computer storage tapes, optical disks, zip drives, floppy disks, and hard disks. Any property bearing the name Whittemore Peterson Institute (WPI) that contains reference to research notes and research data. Authorized officers are directed to conduct an off premise forensic examination of any seized media for evidence that indicates the property is related to Whittemore Peterson Institute (WPI) research.

3. Laboratory notebooks, documents, emails and paperwork containing research notes and research data including any copies of these documents in any form.

4. A black 15"Apple Mac book laptop.



5. Any safety deposit keys or paperwork indicating the existence of a safety deposit box.

6. Any paperwork indicting the existence of a storage unit or rental storage box.

7. Any paperwork or evidence of electronic or other communication with Dr. Francis W. Ruscetti or the Laboratory for Experimental Immunology in Frederick, MA.

_____
Signature of Judge of the Superior Court,
Ventura Judicial District

**AND TO SEIZE IT IF FOUND** and bring it forthwith before me, or this court, at the courthouse of this court. This Search Warrant and incorporated Affidavit was sworn to and subscribed before me this _____ day of _____, 20___, at _____ A.M./P.M. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_____, **NIGHT SEARCH APPROVED: YES __ NO __**
Judge of the Superior Court,
Ventura Judicial District

## STATEMENT OF PROBABLE CAUSE

### I. Experience

I, Todd Hourigan, have been employed as a peace officer in the State of California by the City of Ventura since June of 2003. During my career as a police officer with the City of Ventura, I have worked as a patrol officer and detective investigating a wide variety of crimes. Many of these crimes were embezzlements, frauds, grand thefts, possession of stolen property, gang and drug related crimes.

During my time as a police officer for the City of Ventura, I have attended classes dealing with investigations. In January 2003, I attended the Ventura County Police and Sheriff's Academy where I completed the standard training in the areas of criminal investigation and crime scene management. In 2004, I attended a 24-hour Drug Abuse and Recognition school, sponsored by the Ventura County Sheriff's Department. In 2008, I attended 40 hours on Interview & Interrogation Techniques, given by Behavioral Analysis Training Institute. In November 2008, I attended a Street Gangs and Subcultures class, sponsored by the Los Angeles Sheriff's Department. During this class, I received approximately 40-hours of training re: the gang culture and gang trends. In July 2009, 2010 and 2011, I attended the California Gang Investigators Conference. During these conferences, I received approximately 96-hours of training re: gang trends in California and throughout the country.

I am currently assigned to the Ventura Police Department's Special Enforcement Team as a detective. While working as a patrol officer and detective for the City of Ventura, I have investigated hundreds of embezzlement, fraud, possession of stolen property and grand theft cases. I have assisted in probation searches and search warrants of subjects that have committed and been arrested for embezzlement, fraud and grand theft. I have been involved in embezzlement, fraud, possession of stolen property and grand theft related arrests. Through these cases, I have become familiar

with the elements of the crimes, i.e. embezzlements, fraud, possession of stolen property and grand theft related crimes.

## II. Investigation

On November 18, 2011, I spoke with Detective Jaime McGuire from the University of Nevada, Reno Police Department. I have read the reports of Detective McGuire and spoken to her personal about her report. The following is a summary of her report:

On Tuesday, November 15, 2011 at about 2:30 pm Det. Jaime McGuire responded to work at the University of Nevada, Reno Police Department (UNRPD) and met with Commander Todd Renwick. Det. Jaime McGuire was informed that on Wednesday, November 09, 2011, Annette Whittemore, President and CEO of the Whittemore Peterson Institute (WPI), which is located on the University of Nevada, Reno campus, had filed an incident report concerning stolen materials that contained patent related data and research results that belonged to the Institute.

The employee that had sole possession of the materials, Dr. Judy Mikovits, was terminated by the Institute on September 29, 2011 at about 3:30 pm.

At about 3:00 pm, Detective Warren Conley and Det. Jaime McGuire met with Harvey Whittemore and Max Pfost at the University of Nevada, Reno Police Department (UNRPD) regarding the theft of patent researched from an access-controlled area in the Whittemore Peterson Institute for Neuro-Immune Disease. Detective Warren Conley and Det. Jaime McGuire conducted a videotaped interview with Pfost and Mr. Whittemore in the UNRPD conference room.

Max Pfost stated that he had been the associate research assistant to Dr. Judy Mikovits from 2008 until she was terminated. According to Mr. Pfost, on September 29, 2011, he met with Dr. Mikovits at the Sierra Tap House in Reno, Nevada after her



termination. Mikovits was concerned that the Institute may remove information, tamper with, or destroy the research, which contains notes from each researcher.

During the conversation, Mikovits asked Pfost to enter the building and her office to retrieve the notebooks and secure them. Mikovits also asked Pfost to take some "samples" and ship them to the National Cancer Institute, the Laboratory for Experimental Immunology in Frederick, MA. Pfost proposed he would enter the building before normal business hours through the loading dock doors.

On September 30, 2011 at approximately 5:15 am, Pfost backed up to the loading dock of the Center for Molecular Medicine building (CMM) which is on the University grounds in his black Jeep Cherokee. At 5:16 am, Pfost attempted three times to use his card key to access the doors, but was denied access. Pfost returned later at 8:00 am and again parked at the loading docks. Pfost was only able to gain entry during regular business hours since Annette Whittemore had suspended all entry to preserve the research. Pfost stated he went to Dr. Mikovit's office, #303A and retrieved numerous research notebooks from the drawer. He estimates that he took somewhere around 12 to 20 notebooks. He placed half of them in his backpack and carried out the remainder in his hands. Pfost took the notebooks home and hid the books in a "Birthday" bag in his garage until Dr. Mikovits returned from an Ireland meeting.

Mr. Pfost picked up Dr. Mikovits from the airport on Sunday, October 16, 2011 and she spent the night at his home. While Pfost was at work on Monday, October 17th, Dr. Mikovits packed the remainder of her belongings along with the research notebooks and left town in a rental car, headed to her residence & boat docked at 2031 Jamestown Way Oxnard, CA 93035. Mr. Pfost was unaware that Dr. Mikovits was going to leave but received texts that she had left and was heading home.

Dr. Mikovits has been providing the address of 2031 Jamestown Way Oxnard, California 93035 to WPI and the University of Nevada, Reno as her address while she



25    Exhibit 3

was a researcher for WPI. As of 11:00 am today (November 18, 2011), Dr. Mikovits was observed by Ventura Police officer Lindsay in front of 2031 Jamestown Way in Oxnard. Pfost stated the two worked very closely but had a completely platonic relationship he describes as a "mentor/student" relationship. When asked if Pfost knew the whereabouts of the research notebooks, he stated that between his phone conversations and text messages with Dr. Mikovits, Pfost believed that the stolen property is in the physical possession of one of Dr. Mikovits's patients named Lilly Meehan who resides at 7081 Wolverine St. Ventura, CA 93003.

Mr. Pfost received text messages from Dr. Mikovits that the "mob" was after her due her having possession of the research and that she could only trust 2 people: Mr. Pfost & Lilly Meehan. If anyone came after Dr. Mikovits, they would not be able to find the research because she intended to give the research to Lilly Meehan for safekeeping. Dr. Mikovits intended to then take the research to Dr. Francis W. Ruscetti at the Laboratory for Experimental Immunology in Frederick, MA. Lilly Meehan's current DMV address is 7081 Wolverine Street, Ventura, California.

Det. Jaime McGuire also spoke with Harvey Whittemore who stated the following: Dr. Judy Anne Mikovits worked for the Whittemore Peterson Institute and signed an "Employee Proprietary Information and Invention Agreement". This document was signed every year since September 17, 2007. Dr. Judy Anne Mikovits had possession of the missing/stolen laboratory notebooks while she worked at WPI. She was the only employee with access to the notebooks. Upon her termination, it was determined that the notebooks were missing. Dr. Judy Anne Mikovits was issued Apple MacBook 15 inch black laptop computer that is the property of the WPI. That laptop is also missing from WPI.

- Dr. Judy Anne Mikovits has been formally requested several times to immediately return WPI's property via certified letter and emails. These requests have gone unanswered.

- A Temporary Restraining Order was requested and granted in the Second Judicial Court of Washoe County Nevada on November 07, 2011 restraining Dr. Mikovits from destroying, deleting, or altering in any way the notebooks, flash drives, the laptop, emails, etc. See attached

Dr. Judy Mikovits currently has a $100,000 arrest warrant for possession of stolen property and unlawful taking of computer data issued on November 16th 2011 by the Honorable Patricia Lynch in the Justice Court of Reno Township in the County of Washoe, in Nevada.

The research contained in these notebooks has a potential net worth in the millions of dollars and has taken years to compile/develop. Some of the research is already patented and some of the research has patents pending. There are trade secrets and inventions in the notebooks which are being used to conduct ongoing experiments.

III. **Opinions and Conclusions**

The Whittemore Peterson Institute for Neuro-Immune Disease has a temporary restraining order for Dr. Judy Mikovits restraining Dr. Mikovits not to destroy, delete or alter in anyway the stolen property, i.e. laboratory research notebooks, flash drives provided by WPI, confidential material, any emails, notes or other documents. My opinion is that if Dr. Mikovits and the stolen property are not located immediately, Dr. Mikovits will take every effort to conceal the notebooks to belonging to WPI or ensure

their delivery to Dr. Francis W. Ruscetti or National Cancer Institute, the Laboratory for Experimental Immunology in Frederick, MA.

### B. Conclusions

Based on the facts and opinions stated above, I believe that there is probable cause to believe that the evidence tending to prove felony violations of California Penal Code section 496 PC (Possession of Stolen Property) will be found at the locations listed in the affidavit.

Based on the above information in this affidavit and my experience, education, training, and expertise, it is my opinion that the above listed property is potentially located at the above addresses.

Wherefore it is respectfully requested that a search warrant for the above-described premise be issued. I swear under penalty of perjury that the foregoing is true and correct to the best of my information and belief.